NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, PROSECUTOR, v. STATE WATER POLICY COMMISSION, DEFENDANT.

PASSAIC VALLEY WATER COMMISSION, PROSECUTOR, v. STATE WATER POLICY COMMISSION, DEFENDANT.

CITY OF NEWARK, PROSECUTOR, v. STATE WATER POLICY COMMISSION, DEFENDANT.

Submitted October 6, 1942—Decided January 7, 1943.

Before Justices CASE, DONGES and COLIE.

For North Jersey District Water Supply Commission, *Oscar R. Wilensky* and *Bernard Feinberg*.

For Passaic Valley Water Commission, *Benjamin J. Spitz*.

For City of Newark, *Thomas L. Parsonnet* and *Raymond Schroeder*.

For State Water Policy Commission, *David T. Wilentz* and *Robert Peacock*.

The opinion of the court was delivered by

CASE, J. This is on the consolidated return of three writs of *certiorari* issued against the State Water Policy Commission at the several suits of North Jersey District Water Supply Commission, Passaic Valley Water Commission and City of Newark. The review goes to two resolutions adopted by the defendant commission on January 6th, 1941, and December 1st, 1941, respectively. The resolution of January 6th, 1941, purporting to follow the provisions of *R. S.* 58:2-1, *et seq.*, fixed a minimum rate of $2.50 per million gallons for surface water diverted in excess of the free allowance effective against the prosecutors and others, and laid a charge of $1 per million gallons for such portion of the water supply diverted from subsurface, well or percolating water supplies, as had been acquired by the state's right of eminent domain. The resolution of December 1st, 1941, following protests against the higher rate, reduced the minimum rate for diverted surface water as to some of the diverters to $1.50 per million gallons.

North Jersey District Water Supply Commission is a public body organized for the purpose of providing a public water supply pursuant to the authority given in *R. S.* 58:5-1, *et seq.* It maintains a reservoir, fed by the Wanaque River, from which it furnishes water to the municipalities of Newark, Paterson, Passaic, Clifton, Kearny, Montclair, Bloomfield and Glen Ridge. It also supplies from that impoundage a number of other municipalities indirectly or on behalf of the several municipalities which participate in the reservoir project.

Passaic Valley Water Supply Commission is a public body organized by an act of the legislature to represent and act as the agent of the Cities of Paterson, Passaic and Clifton for the distribution of water and water supplies. The Commission diverts large quantities of water from the Passaic River and also, as a partner in the North Jersey District Water Supply Commission, receives water from the Wanaque supply. It owns and controls a purification plant and pumping station known as the Little Falls plant and supplies water to the named cities and also to the Borough of Lodi.

The City of Newark has a watershed and water supply system known as the Pequannock Reservoir which it has owned and operated since prior to 1907. It, also, is a partner in the North Jersey District Water Supply Commission and receives water from the Wanaque reservoir.

Defendant, State Water Policy Commission, was constituted under the authority of chapters 70 and 71 of the Pamphlet Laws of 1916, now *R. S.* 58:5-1, *et seq.,* and has the function of imposing the charges which are the subject of this controversy. The statutory provision for the diversion charges was given by section 8 of chapter 252 of the Pamphlet Laws of 1907 which, so far as the points in issue are concerned, has been retained practically without change, except for subdivision into paragraphs, as *R. S.* 58:2-1 to *R. S.* 58:2-5, inclusive. It will be noted that the statute providing for the diversion charges was passed before the incorporation of district water supply commissions which serve more than one municipality and that the statute does not, in terms, specify such public corporations. Nevertheless the arguments presented tacitly concede that prosecutors are within the purview of the statute. The salient portions of the statute follow:

58:2-1. "Every municipality, corporation or private person diverting the waters of streams or lakes with outlets for the purpose of a public water supply shall make annual payments on May first to the state treasurer for all such water diverted in excess of a total amount equal to one hundred gallons daily for each inhabitant of the municipality or municipalities supplied, as shown by the census of one thousand nine hundred and five, or in excess of such greater amount as it may have been legally diverting on June seventeenth, one thousand nine hundred and seven.

"The provisions contained in this chapter as to payment to the state for water diverted from surface sources shall not apply to waters obtained from wells, except as provided in section 58:2-4 of this title."

58:2-2. "Payment for water diverted as provided in section 58:2-1 of this title shall be deemed to be a license and its amount shall be fixed by the state water policy commission at a rate of not less than one dollar nor more than ten

dollars per million gallons. If at all times an amount equal to the average daily flow for the driest month, as shown by the existing records, or in lieu thereof one hundred and twenty-five thousand gallons daily for each square mile of unappropriated watershed above the point of diversion, shall be allowed to flow down the stream, the commission shall fix the minimum rate and may increase the rate proportionally as a less amount is allowed to flow down the stream below the point of diversion, due account being taken in fixing said increase both of the duration and amount of the deficiency. The aforesaid one hundred and twenty-five thousand gallons daily for each square mile of unappropriated watershed shall be additional to the dry-season flow or any part thereof which may be allowed to flow down from any appropriated watershed or watersheds above the point of diversion. * * *"

58:2-4. "In the case of the condemnation of subsurface, well or percolating water supplies, there shall be charged by the state a fee of one dollar per million gallons from that portion of the supply for the acquisition of which the state's right of eminent domain is exercised for all water diverted, which charge shall be certified to the state comptroller by the state water policy commission and its collection shall be enforced in the same manner as hereinbefore in this chapter provided in the case of excess diversion of surface water supplies."

In March of 1932 the defendant commission adopted a regulation, still in operation, applicable to the crediting to the several municipalities of their free diversion allotment as follows:

"Whereas, The method of computing the free allowance for excess diversion of surface waters, under the provisions of chapter 252, Laws of 1907, are not clearly set forth in said law in cases where a municipality receives surface water from more than one diverter; Therefore,

"Be It Resolved, That the following rule be adopted for the calculation of said free allowance for the calendar year 1932 and subsequent years:

"The Free Allowance for excess diversion of surface water, under the provisions of Section 8, Chapter 252, Laws of

1907, in cases where a municipality receives surface water from more than one diverter, shall be credited to each diverter in proportion to the amount of surface water supplied."

For many years the charge imposed against the several diverters for excess diversion was at the minimum rate named in the statute, namely, $1 per million gallons. That rate, so far as we can ascertain from the incomplete records submitted in the case, continued until sometime in the 1930s when it was raised by the commission to $1.50 per million gallons. There was no objection to the increase until after the rate had been further increased, in January of 1941, to the sum of $2.50 per million gallons. Thereupon a number of the public corporations affected by the increase filed remonstrances, and although the rate as to some of them was restored by the December 1st, 1941, resolution, *supra*, to $1.50 per million gallons the objection is made that the lawful rate is the statutory figure of $1 per million gallons.

The points presented by the several prosecutors may be consolidated thus: (1) The defendant commission erred in refusing to grant to each prosecutor a full free allowance for each municipality served by it, regardless of whether a free allowance for that municipality had been granted to one or more of the other prosecutors; (2) the rate applicable to each prosecutor under the statute was the minimum rate of $1 per million gallons for excess water diverted; (3) the statute, 58:2-1, is discriminatory and unconstitutional in that it does not provide a uniform rate for the diversion of surface and of subsurface waters; (4) the Passaic Valley Water Commission is entitled to a full allowance for the Borough of Lodi.

(1) Point one is really an attack upon the policy declared in defendant's resolution of March, 1932, wherein the defendant decided, in effect, that the free allowance made under *R. S.* 58:2-1 was upon the basis of a single allotment to a municipality, and that the taking of a supply from more than one source would not entitle a municipality to more than the equivalent of one free allowance; and that where more than one source contributed to the supply of a single municipality, the several sources would be credited with a

fair portion of the full municipal allowance but that the several sources should not each receive the full credit for doing, in combination, that which any one of them would have received had it been the sole source of supply. To make specific application of prosecutors' contention: The North Jersey Commission and the Passaic Valley Commission both contribute to the supplies of the Cities of Passaic and Paterson and, therefore, each commission should receive a full free allowance for both of the cities; the North Jersey Commission sends a supply into the City of Newark, and the City of Newark also gets its own supply from the Pequannock, therefore the City of Newark should be granted its full free allowance and the North Jersey Commission should also get a full free allowance for the City of Newark as though it were furnishing the total Newark supply.

We are of the opinion that the free allowance was statutorily calculated upon the municipality as the benefited unit and is not subject to duplication. The resolution of 1932 was, we think, in full compliance with the spirit and the intent of the statute. To hold that the free allowance granted each municipality should be multiplied by the number of diverting agencies which contribute to its supply would be inconsistent with the statutory method of basing the allowance upon the allotment of one hundred gallons daily for each inhabitant shown by the 1905 census or the alternate allotment of an amount equal to the legal diversion on June 17th, 1907; and whatever obscurity the statute presents in this respect may reasonably be laid to the facts that at the time of the passage of the statute there was no such division in supply as now exists and that the subsequent re-enactment in the Revision of 1937 was clearly a restatement of the original statute and not a revision to accommodate the statute to later developments. If we assume that the free allowance is to be so limited, there must, of course, be some method of dividing the allotment where two or more diverters serve the same municipality, and we find that the course pursued by the defendant in that respect was reasonable and valid.

(2) Prosecutors base their argument for a $1 charge upon the contention that they complied with the conditions named

in *R. S.* 58:2-2 under which the Commission was directed to "fix the minimum rate." Defendant does not dispute that factual assertion and appears to present no legal argument except that prosecutors have not heretofore objected. We are assuming, in the absence of dispute, that prosecutors did, as they assert, comply with the statutory conditions which entitled them to the minimum rate; and upon that assumption we think that the payment of an excess charge by one public body to another such over a period varying from six to ten years should not serve to give the cloak of legality to that which, on its face, carries no show of right. The statute, in directing the Commission to fix a rate of not less than $1 nor more than $10, obviously named a minimum rate and and a maximum rate. The statute proceeded to direct that upon a designated escapage being permitted at all times to flow down the stream "the commission shall fix the minimum rate;" and we find no sound reason to doubt that the minimum rate which the Commission was thus directed to fix in that circumstance was the minimum rate just named. Upon that contention we find for the prosecutors.

Point (3) loses its force in view of our construction, above, of the statute; but we discover no merit in it. Municipalities and state agencies may not invoke the protection of the Fourteenth Amendment against the state. *City of Newark* v. *State of New Jersey*, 262 *U. S.* 192; 67 *L. Ed.* 943; *Williams* v. *Eggleston*, 170 *U. S.* 304, 310; 42 *L. Ed.* 1047, 1049. The authority given in the statute to impose fees within the limitations therein named has been pronounced valid. *State* v. *Trenton*, 97 *N. J. L.* 241. Moreover, there is a substantial difference between the respective conditions relating to surface and subsurface waters that would sustain a difference in rate, if there was, in fact, a difference.

(4) We discover no satisfactory proof of the population of Lodi by the 1905 census or of a legal diversion by it in 1907 and counsel have not indicated where the same may be found if it does in truth exist; therefore there is no ground for directing a special allowance as to that borough.

The result is that the resolutions of January 6th, 1941, and December 1st, 1941, are found to be contrary to law in that

they fixed a fee greater than the minimum fee which should have been applied; in the other respects complained of the resolutions are valid. Under all the circumstances we conclude that no costs should be allowed.